UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SEA METROPOLITAN, S.A.,

                    Petitioner,

   -against-

DGM COMMODITIES CORP., f/k/a D & N
COMMODITIES INC., f/k/a D & N COM, INC.,
DAVID ELUA a/k/a DAVID ELUASHVILI, DGM
HOLDING CORP., DAVINI REALTY CORP. and
ABC CORP. 1 – 5,

                    Respondents.

*SEALED*

No. 13 Civ. 1521 (DRH) (AKT)


**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF**
**_EX PARTE_ APPLICATION FOR LEAVE TO AMEND, ORDER OF ATTACHMENT,**
**POST-JUDGMENT INJUNCTION AND TEMPORARY RETRAINING ORDER**

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Petitioner
SEA METROPOLITAN, S.A.
80 Pine Street
New York, NY  10005
Tel.: (212) 425-1900
Fax: (212) 425-1901

_Of Counsel:_
  Michael E. Unger
  Susan Lee

401645.1

## PRELIMINARY STATEMENT

Petitioner SEA METROPOLITAN S.A. ("Petitioner" or "SEA METROPOLITAN") respectfully submits this Memorandum of Law, to be field under seal together with the accompanying Amended Verified Petition and Unger Affidavit and exhibits thereto, in support of Petitioner's *ex parte* application for: (a) a order sealing the court file; (b) leave to file an Amended Verified Petition to assert *alter ego* and fraudulent conveyance claims against additional parties; (c) an order of attachment; and (d) a post-judgment injunction and temporary restraining order—all of which is sought to aid in the enforcement of the U.S. District Court Judgment entered on January 24, 2013 in the amount of $4,358,850.59 in favor of Petitioner and against Respondent DGM COMMODITIES CORP., f/k/a D & N COMMODITIES INC., f/k/a D & N COM, INC. ("DGM COMMODITIES").

For the reasons set forth below, exigent circumstances require the immediate granting of this *ex parte* application.

## FACTS

The facts relevant to the instant application are set forth at length in the accompanying Amended Verified Petition and Unger Affidavit together with exhibits thereto, to which the Court is respectfully referred by citation herein.

## ARGUMENT

### POINT I
### LEAVE TO AMEND SHOULD BE GRANTED

Rule 15(a) of the Federal Rules of Civil Procedure provides for liberal amendment of pleadings and directs that leave to amend "shall be freely given when justice so requires." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Grace v. Rosenstock*, 228 F.3d 40 (2d Cir. 2000), *cert. denied*, 121 St. Ct. 1362 (2001). The decision to grant or deny a

1

401645.1

request to amend is within the discretion of the district court. *Foman v. Davis*, 327 U.S. 178 (1962). There must exist, however, a good reason for the district court to deny a motion for leave to amend. *Acito v. Imcera Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995). Absent evidence of undue delay, bad faith, or undue prejudice to the opposing party, a motion to amend should be granted. *Foman*, 371 U.S. at 182.

DGM COMMODITIES is not prejudiced by this amendment. DGM COMMODITIES as well as each of the newly added Respondents have been put on notice of the U.S. Judgment entered in favor of Petitioner in the related proceeding and have been duly served with Subpoenas and Restraining Notices. DGM COMMODITIES and each of the newly added Respondents have refused to respond or acknowledge any of the post-judgment requests duly serve upon them and thus are now in contempt of Court. Moreover, the allegations set forth in the proposed Amended Verified Petition assert viable claims against DGM COMMODITIES and the newly added Respondents based on a U.S. Judgment arising out of the same underlying London arbitral proceedings that formed the subject matter of the original verified petition filed in this action.

For the foregoing reasons, it is respectfully submitted that leave to amend the verified petition should be granted. *ResQNet.com, Inc. v. Lansa, Inc.*, 382 F. Supp.2d 424 (S.D.N.Y.), *appeal dism'd*, 138 Fed Appx. 312 (2d Cir. 2005).

## POINT II
## THE GROUNDS FOR ATTACHMENT HAVE BEEN MET

N.Y. C.P.L.R. § 6211(a) authorizes this Court to issue an order of attachment without notice. The Rule states: "When granted; contents. (a) An order of attachment may be granted without notice, before or after service of summons and at any time prior to judgment...."

2

The substantive requirements for an attachment are set forth in N.Y. C.P.L.R. § 6212. Specifically, a plaintiff is required to show: (1) "that there is a cause of action"; (2) "that it is probable that the plaintiff will succeed on the merits"; (3) "that one or more grounds for the attachment provided in section 6201 exist"; and (4) "that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff". *See* N.Y. C.P.L.R. § 6212(a).  In addition, a plaintiff is required to give "an undertaking in a total amount fixed by the court but not less than five hundred dollars". *See* N.Y. C.P.L.R. § 6212(b).

Based on the facts and circumstances of the case as set forth in the Amended Verified Petition and accompanying Unger Affirmation, it is respectfully submitted that Petitioner has a meritorious cause of action for money damages against Respondents in which it is probable that Petitioner will succeed on the merits and the grounds for an attachment under N.Y. C.P.L.R. § 620 exist.

The foregoing factors demonstrate that Petitioner has established the elements of a cause of action to enforce the existing U.S. Judgment as against David Elua, DGM HOLDING and DAVINI REALTY on the basis that they are the *alter egos* of DMG COMMODITIES, and *vice versa*, such that they each are jointly and severally liable to Petitioner for the debts and obligations of DGM COMMODITIES.

Courts impose *alter ego* liability when a defendant either (a) "used the corporation to perpetrate fraud" or (b) "so dominated and disregarded the corporation's corporate form that the corporation primarily transacted the defendant's personal business rather than its own corporate

3

business." *See, Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980); *Wm. Passalacqua Builders v. Resnick Developers S.*, 933 F.2d 131, 138-39 (2d Cir. 1991).[1]

In determining whether alter *ego* liability exists, courts consider a number of factors, including: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's length; (8) whether the corporations are treated as independent profit centers; and (9) payment or guarantee of the corporation's debts by the dominating entity.   *See id.*   These factors are extensive but not exhaustive and any combination of them may warrant the piercing of the corporate veil. *See, Budisukma Permai SDN BHD v. NMK Products & Agencies Lanko*, 606 F. Supp. 2d 391, 399 (S.D.N.Y. 2009).

In applying the *alter ego* standard to the facts of this case as outlined in the Amended Verified Petition and accompanying Unger Affirmation, nearly every indicia of *alter ego* status has been shown to exist.

The same facts and circumstances also demonstrate that Respondents have engaged and are soon to engage in the conveyance of property in violation of New York Debtor and Creditor Law, Article 10.   The New York statute is applicable to any conveyance which "includes every

---

[1] *See also Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d 698, 703 (2d Cir. N.Y. 1990) ("New York law allows the corporate veil to be pierced either when there is fraud or when the corporation has been used as an alter ego."); *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. N.Y. 1979) ("Because New York courts disregard corporate form reluctantly, they do so only when the form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation . . ., and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego."). *See also, Austin Powder Co. v. McCullough*, 216 A.D.2d 825, 827 (1995) (under New York law, the corporate veil will be pierced to achieve equity, even absent fraud, "when a corporation has been so dominated by an individual or another corporation and its separate entity so ignored that it primarily transacts the dominator's business instead of its own and can be called the other's alter ego").

payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance". *See* New York Debtor and Creditor Law, Art. 10 § 270.

Under Section 273 of the New York statute, "every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration". Moreover, under Section 273-a of the statute, "every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment."

The circumstances of this case as set forth in the Amended Verified Petition and accompanying Unger Affirmation establish clear grounds for Petitioner's fraudulent conveyance claims against Respondents and such the conveyances should be set aside and obligations annulled to the extent necessary to satisfy Petitioner's U.S. Judgment and claims herein. The property so conveyed is therefore subject to attachment and levy execution and the parties so responsible are subject to being enjoined from further disposing of their property pursuant to Sections 278 and 279 of the New York Creditor and Debtor Law.

Further, there are two alternative grounds under N.Y. C.P.L.R. § 6201 authorizing the attachment in this case. The first ground for the attachment is provided in N.Y. C.P.L.R. § 6201(5) as "the cause of action is based on a judgment, decree or order of a court of the United States...." *See, Jackson Hewitt Inc. v. Adams*, 880 N.Y.S.2d 873 (N.Y. Sup. Ct. Nassau Co., 2009) (granting N.Y. C.P.L.R. § 6201(5) attachment and N.Y. C.P.L.R. § 6210 temporary

restraining order to aid in enforcement of New York judgment);. *Star Industries Inc. v. Innovative Beverages Inc.*, 2007 N.Y. Misc. LEXIS 8821, at *2-3 (N.Y. Sup. Ct. Nassau Co., 2007) (same); *Sunrest Props., LLC v. Sunrest Nursing Home*, 8 Misc. 3d 1028(A); 806 N.Y.S.2d 449 (N.Y. Sup. Ct. Nassau Co., 2005) (holding that "N.Y. C.P.L.R. § 6201(5) applies to judgments entered in the federal courts or in courts of other states.").

The second alternative ground for the attachment is provided in N.Y. C.P.L.R. § 6201(3): "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." Here, the events outlined above that have led to the filing of this application clearly demonstrate Respondents' transfer, disposal and secreting of DGM COMMODITIES' assets and operations to the other sister entities 100% beneficially owned by David Elua, either directly or through DGM HOLDING, specifically for purposes of evading creditors (including the processes of attachment issued in support of Petitioner's (ultimately successful) underlying claims) and to frustrate the enforcement of the U.S. Judgment entered in SEA METROPOLITAN's favor, no portion of which has been paid or recovered from DGM COMMODITIES to date. In sum, the circumstances of this case show the requisite inference of intent on the part of each of the Respondents, either individually or jointly and severally, to defraud creditors or frustrate the enforcement of a judgment to be rendered in favor of SEA METROPOLITAN for purposes of an attachment pursuant to N.Y. C.P.L.R. § 6201(3).

Further, and in accordance with the requirements for an undertaking specified by N.Y. C.P.L.R. § 6212, Petitioner is prepared to provide an undertaking in an amount to be fixed by the

Court not less than the statutory minimum of $500.  Moreover, no prior application has been made for the type of relief requested herein.

Based upon the foregoing, Petitioner respectfully requests that this Court issue the proposed order of attachment under N.Y. C.P.L.R. §§ 6201 and 6211 and authorize discovery of information regarding any property in which Respondents have an interest or debts owing to the Respondents as provided for in N.Y. C.P.L.R. § 6220.

## POINT III
### THE GROUNDS FOR PRELIMINARY INJUNCTION AND *EX PARTE* RELIEF PURSUANT TO FED. R. CIV. P. 65 HAVE BEEN MET

District courts are authorized to issue preliminary injunctions and *ex parte* temporary restraining orders pursuant to Fed. R. Civ. P. 65 that prohibit parties from disposing of the property to ensure the enforceability of a money judgment.  The Rule states in relevant part as follows:

> (a) Preliminary Injunction.
>
> (1) *Notice.* The court may issue a preliminary injunction only on notice to the adverse party.
>
> (2) *Consolidating the Hearing with the Trial on the Merits.* Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.
>
> (b) Temporary Restraining Order.
>
> (1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will

7

result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

The Rule "does not set forth a specific standard for the determination of a request for a preliminary injunction. Therefore, the courts evaluate an application for a preliminary injunction on the basis of traditional equitable grounds. The precise formulation and application of the standard by which an application for a preliminary injunction is determined varies from circuit to circuit. However, courts generally take into account the movant's likelihood of success on the merits and the threat of irreparable harm caused by the non-movant's conduct." 13-65 Moore's Federal Practice - Civil § 65.22.

In this regard, courts review several equitable factors, including: "(1) Movant's likelihood of success; (2) Likelihood that movant will suffer irreparable injury if the request for preliminary injunction is denied; (3) Balance of hardships between the parties and coupled against hardship faced by non-parties; and (4) Effect of grant or denial of preliminary injunctive relief on public policy." *See id.* "These considerations are factors to be balanced, not prerequisites to be met. Thus, a district court is not required to make specific findings on all four factors in deciding a motion for a preliminary injunction if fewer factors are dispositive of the issue." *See id.*

Moreover, in the post-judgment setting, district courts have authority to exercise their equitable powers to issue injunctions pursuant to Rule 65 for purposes of preventing monetary harm. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999).

Based upon the facts set forth in the Amended Verified Petition and accompanying Unger Affirmation, any application of the above-referenced factors to the facts and circumstances in

8

401645.1

this case weigh heavily in favor of the issuance of a preliminary injunction against Respondents enjoining them form disposing of, encumbering, transferring, conveying or otherwise interfering with property interests against which the U.S. Judgment entered in favor of SEA METROPOLITAN and against DGM COMMODITIES may be enforced.

Moreover, the exigent circumstances outlined in the Amended Verified Petition and accompanying Unger Affirmation establish that Petitioner will suffer immediate and irreparable injury if an *ex parte* temporary restraining order is not issued on an emergency basis before the hearing on the injunction application is held. Respondents David Elua, DGM COMMODITIES and DGM HOLDING have entered into a settlement agreement with Wells Fargo, pursuant to which David Elua, the sole beneficial and controlling owner of DGM COMMODITIES, has agreed to pay $1.6 million to Wells Fargo in satisfaction of the bank's pending claims for breach of a loan agreement as against DGM COMMODITIES, the principal borrower, and its guarantors, Elua and DGM HOLDING.

The nature of this action is to obtain security and maintain the status quo to aid in the enforcement of a U.S. Judgment entered as a result of DGM COMMODITIES' failure to honor maritime arbitration awards issued against it on the merits of Petitioner's claims.[2] The absence of the relief sought will likely result in Petitioner's complete inability to recover any part of the U.S. Judgment from DGM COMMODITIES or the substantial legal fees and costs to which

---

[2] The well-settled principle that admiralty courts are, at bottom, courts of equity applies in this case. Indeed, it has been stated that "admiralty courts [are] courts of purest equity." *Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico S.A.*, 06 Civ. 15299 (PKL), 2007 U.S. Dist. LEXIS 18827, *5 (S.D.N.Y. Feb. 26, 2007). It is therefore established that an admiralty court may use its equitable powers where appropriate to avoid injustice and can use its discretion in fashioning a remedy. *See Swift & Co. Packers v. Compania Colombiana Del Caribe*, 339 U.S. 684 (1950); *Montauk Oil Transp. Corp. v. Sonat Marine, Inc.*, 871 F.2d 1169, 1172 (2d Cir. 1989); *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 587 F.Supp.2d 548, 571 (S.D.N.Y. 2008) (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998)).

9

401645.1

Petitioner is entitled in successfully prosecuting its claims and in successfully defending DGM

COMMODITIES' appeal in the London proceedings.

DGM COMMODITIES has failed to pay any portion of the U.S. Judgment or confirm

that it is able and willing to do so, and is now taking even further steps to ensure that its property

is immune from execution and, indeed, has already done so. Moreover, the controlling principals

behind DGM COMMODITIES--David Elua, DGM HOLDING and DAVINI REALTY-- have

shown equivalent disregard in respect of Petitioner's the underlying claims and post-judgment

remedies.

Based upon the foregoing, Petitioner respectfully submits that the grounds for a

preliminary injunction and temporary restraining order have been met and requests the Court to

grant such relief, together with the order of attachment, on an emergency basis to prevent the

further dissipation of their assets and to maintain the status quo pending an adjudication on the

merits of Petitioner's claims herein.

## CONCLUSION

For the reasons set forth above, Petitioner respectfully submits that it has met the criteria

for an *ex parte* attachment pursuant to N.Y. C.P.L.R. §§ 6201 and 6211 over all property in

which each of the Respondents has an interest, up to the full amount of Petitioner's base claims

plus interest, fees and costs, and for a preliminary injunction and *ex parte* temporary restraining

order pursuant to Fed. R. Civ. P. 65 and 69 that enjoins Respondents from selling, disposing,

encumbering, secreting, transferring, removing or otherwise interfering with property of DGM

COMMODITIES against which Petitioner's U.S. Judgment dated January 24, 2013 may be

enforced.

10

401645.1

Dated: New York, New York
       May 28, 2013

                              Respectfully submitted,

                              FREEHILL HOGAN & MAHAR, LLP
                              Attorneys for Petitioner
                              SEA METROPOLITAN, S.A.


                    By:       _____
                              Michael E. Unger
                              Susan Lee
                              80 Pine Street
                              New York, New York 10005
                              Tel.: (212) 425-1900
                              Fax: (212) 425-1901

11