UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SEA METROPOLITAN, S.A., | : | Case No. 13 CV 1521 (DRH)(AKT) |
| | : | |
| Petitioner, | : | |
| | : | |
| | : | |
| -against- | : | |
| | : | |
| DGM COMMODITIES CORP., f/k/a D & N, | : | |
| COMMODITIES INC., f/k/a D & N COM, INC., | : | |
| DAVID ELUA a/k/a DAVID ELUASHVILI, | : | |
| DGM HOLDING CORP., DAVINI REALTY | : | |
| LLC, and ABC CORP. 1-5, | : | |
| | : | |
| Respondents. | : | |
| | : | |

## MEMORANDUM OF LAW OF RESPONDENTS DAVID ELUA, DGM HOLDING CORP. AND DAVINI REALTY LLC IN OPPOSITION TO PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION AND ORDER OF ATTACHMENT

MARGOLIS & TISMAN LLP
280 MADISON AVENUE, SUITE 500
NEW YORK, NY 10016

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

I.      PRELIMINARY STATEMENT ............................................................... 1

II.     STATEMENT OF FACTS ......................................................................... 2

III.    ARGUMENT............................................................................................. 2

        A. Petitioner Is Not Entitled To A Preliminary Injunction.......................................... 2

              1. The Court Lacks Authority To Grant The Preliminary Injunction Sought
                 Here........................................................................................................... 2

              2. Petitioner Does Not Meet The Tests Required To Obtain A Preliminary
                 Injunction.................................................................................................. 4

                    (a)     Petitioner Cannot Show Irreparable Harm............................................. 4

                    (b)     Petitioner Cannot Establish Likelihood of Success ............................... 5

              3. Petitioner Is Not Entitled To An Injunction Because There Is No Merit To
                 Its Claims And It Has Not Shown That The Balance of Hardship Tips In
                 Its Favor..................................................................................................... 16

        B. Petitioner Is Not Entitled To An Attachment ......................................................... 17

        C. The Court Lacked Jurisdiction Over Opposing Respondents When It Signed
           The Order Granting The TRO And Ordering The Accounting ............................. 23

        D. Petitioner Is Not Entitled To Disclosure Under CPLR Section 6220.................... 24

        CONCLUSION............................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*In re Amaranth Natural Gas Commodities Lit.,*
  587 F. Supp. 2d 513 (S.D.N.Y. 2008) ........................................................................................13

*In re Arbitration Between Promotora De Navegacion, S.A.,*
  131 F. Supp. 2d 412 (S.D.N.Y. 2000) ..........................................................................................5

*Bank of New York v. Nickel,*
  14 A.D.3d 140 (1st Dep't 2004)...........................................................................................19, 23

*Brastex Corp. v. Allen Int'l, Inc.,*
  702 F.2d 326 (2d Cir.1983) .......................................................................................................18

*Bravado Int'l Group Merchandising Services, Inc. v. Ninna, Inc.,*
  655 F. Supp. 2d 177 (E.D.N.Y. 2009) .........................................................................................7

*Breznoff v. Vasquez,*
  107 Misc. 2d 197 (Civ. Ct. N.Y. Co. 1980)................................................................................20

*Canwest Global Comm. Corp. v. Mirkaei Tikshoret Ltd.,*
  9 Misc.3d 845 (Sup. Ct. N.Y. Co. 2005) ...................................................................................16

*Carteret Savings Bank, F.A. v. East-West Assocs. Ltd. Partnership,*
  143 A.D.2d 612, 533 N.Y.S.2d 428 (1st Dep't 1988),
  *appeal dismissed,* 73 N.Y.2d 918 (1989) ..................................................................................25

*Computer Strategies, Inc. v. Commodore Business Machines, Inc.,*
  105 A.D.2d 167 (2d Dep't 1984) ..........................................................................................20, 22

*Credit Agricole Indosuez v. Rossiyskiy Kredit Bank,*
  94 N.Y.2d 541 (2000)...................................................................................................................3

*Dic Animation City, Inc. v. McNaught Syndicate, Inc.,*
  1993 WL 535064 (S.D.N.Y Dec. 21, 1993) ...............................................................................16

*District 15, Int'l Assoc. of Machinist and Aerospace Workers, AFL-CIO v. Numberall Stamp and
  Tool Co., Inc.,* 1987 WL 19285 (S.D.N.Y. Oct. 28, 1987).............................................................3

*D. Klein & Son, Inc. v. Good Decision, Inc.,*
  147 Fed. Appx. 195 (2d Cir. Feb. 15, 2005)...............................................................................13

*Doninger, P.P.A. v. Niehoff,*
    527 F.3d 41 (2d Cir. 2008) ............................................................................................................4

*Eaton Factors Co. Inc. v. Double Eagle Corp.,*
    17 A.D.2d 135 (1st Dep't 1962)........................................................................................20, 21, 22

*Erdman v. Stevens,*
    458 F.2d 1205 (2d Cir.),
    *cert. denied,* 409 U.S. 889 (1972)..............................................................................................7, 14

*Etalon IMOB S.R.L. v. Schoenbach,*
    2012 WL 474595 (S.D.N.Y. Oct. 3, 2012)...............................................................................3, 25

*Ferriter v. Cook,*
    231 A.D.2d 871 (4th Dep't 1996) ............................................................................................3, 24

*Fischer Diamonds, Inc. v. Andrew Meyer Designs, L.L.C.,*
    2006 WL 1720431 (E.D.N.Y. June 21, 2006)................................................................................3

*Ford Motor Credit Co. v. Hickey Ford Sales, Inc.,*
    62 N.Y.2d 291 (1984)...................................................................................................................19

*Glencore AG v. Bharat Aluminum Co. Ltd.,*
    2010 WL 4323264 (S.D.N.Y. Nov. 1, 2010)..................................................................................5

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,*
    527 U.S. 308 (1999)........................................................................................................................3

*Guinan v. Allan,*
    40 A.D. 137, 57 N.Y.S. 614 (2d Dep't 1899) ...........................................................................3, 25

*Harry Winston, Inc. v. Acheson,*
    144 N.Y.S.2d 472 (Sup. Ct. N.Y. Co. Special Term 1955).............................................................3

*Heller Financial, Inc. v. Wall Street Imports, Ltd.,*
    140 Misc. 2d 205 (Sup. Ct. N.Y. Co. 1998) ............................................................................3, 25

*Home Ins. Co. v. RHA/Pennsylvania Nursing Homes, Inc.,*
    113 F. Supp. 2d 633 (S.D.N.Y. 2000) .....................................................................................3, 24

*Hughes v. Konstantine,*
    2011 WL 3678828 (E.D.N.Y. Aug. 17, 2011) ...............................................................................3

*James v. Loran Realty Corp.,*
    20 N.Y.3d 918 (2012)......................................................................................................................6

iii

*JSC Foreign Economic Assoc. Technostroyexport v. Int'l Development & Trades Services, Inc.*,
295 F. Supp. 2d 366 (S.D.N.Y. 2003) ..................................................................................... 3, 15

*Kalin v. Xanboo, Inc.*,
526 F. Supp. 2d 392 (S.D.N.Y. 2007) ......................................................................................... 13

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
500 F.3d 111 (2d Cir. 2007),
*cert. denied*, 554 U.S. 929 (2008) ............................................................................................... 3

*Leeward Constr. Co. v. American Univ. of Antigua-College of Medicine*,
2013 WL 1245549 (S.D.N.Y. Mar. 26, 2013) .............................................................................. 5

*Leykis v. NYP Holdings, Inc.*,
899 F. Supp. 986 (E.D.N.Y. 1995) ............................................................................................... 7

*Mag Portfolio Consult. Gmbh v. Merlin Biomed Group LLC*,
268 F.3d 58 (2d Cir. 2001) ........................................................................................................... 3

*Michaels Elec. Supply Corp. v. Trott Elec. Inc.*,
231 A.D.2d 695 (2d Dep't 1996) .......................................................................................... 18, 19

*Morin v. Trupin*,
738 F. Supp. 98 (S.D.N.Y. 1990) .......................................................................................... 19, 20

*Morris v. New York State Dep't of Taxation*,
82 N.Y.2d 135 (1993).................................................................................................................... 7

*Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*,
2006 WL 2337186 (S.D.N.Y. Aug 11, 2006)........................................................... 18, 20, 21, 22

*Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., Ltd.*,
484 U.S. 97 (1987)................................................................................................................... 3, 24

*Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama S.A.*,
312 F.2d 299 (2d Cir.),
*cert. denied*, 373 U.S. 949 (1963).................................................................................................. 5

*People v. Garson*,
6 N.Y.3d 604 (2006)..................................................................................................................... 16

*Shiu v. New Peking Taste Inc.*,
2012 WL 2351370 (S.D.N.Y. May 28, 2013) ....................................................................... 18, 19

*Signal Capital Corp. v. Frank*,
895 F. Supp. 62 (S.D.N.Y. 1995) ......................................................................................... 18, 20

*Song v. 47 Old Country, Inc.,*
    2011 WL 3846929 (E.D.N.Y. 2011) ............................................................................. 18, 20, 23

*Swiss Bank Corp. v. Eatessami,*
    26 A.D.2d 287 (1st Dep't 1966) ...................................................................................... 19

*Taizhou Zhongneng Import And Export Co., Ltd. v. Koutsobinas,*
    2013 WL 335971 (2d Cir. Jan. 30, 2013) ......................................................................... 6

*TNS Holdings, Inc. v. MKI Sec. Corp.,*
    92 N.Y.2d 335 (1998) ..................................................................................................... 7

*Trigo HNOS, Inc. v. Premium Wholesale Groceries,*
    424 F. Supp. 1125 (S.D.N.Y. 1976) ............................................................................... 18

*Trump v. Cheng,*
    9 Misc.3d 1120(A), 2005 WL 2738344 (Sup. Ct. N.Y. Co. Sep. 14, 2005) ................... 18

*Two Kids from Queens, Inc. v. J & S Kidswear, Inc.,*
    2010 WL 475319 (E.D.N.Y. Feb. 8, 2010) ............................................................. 6, 9, 13

*Urstadt Biddle Properties, Inc. v. Excelsior Realty Corp.,*
    17 Misc.3d 1130(A), 2007 WL 4151664 (Sup. Ct. West. Co. Sep. 28, 2007) ............... 19

*Valle v. YMCA of Greater New York,*
    2006 WL 1376935 (S.D.N.Y. May 17, 2006) .............................................................. 7, 14

*Waite v. Schoenbach,*
    2010 WL 4456955 (S.D.N.Y. Oct. 29, 2010) ................................................................. 13

## STATUTES

9 U.S.C. § 9 ....................................................................................................................... 3

CPLR § 6201(3) ................................................................................................................. 17

CPLR § 6210 ..................................................................................................................... 16

CPLR § 6201(5) .............................................................................................................. 3, 23

CPLR § 6212(a) ................................................................................................................. 17

CPLR § 6220 ..................................................................................................................... 24

N.Y.D.C.L. § 273 .............................................................................................................. 15

N.Y.D.C.L. § 273-a ..................................................................................................................................15

N.Y.D.C.L. § 276..................................................................................................................................15

## I. **PRELIMINARY STATEMENT**

Respondents David Elua, DGM Holding Corp. ("DGM Holding") and Davini Realty LLC ("Davini") (collectively "opposing Respondents") submit this opposition to the motion of Petitioner for a preliminary injunction and attachment. Petitioner seeks confirmation of an arbitration award against another entity, DGM Commodities Corp. ("DGM Commodities"), and also asks that the property of the opposing Respondents be restrained and attached on the baseless ground that the opposing Respondents are "alter egos" of DGM Commodities, and engaged in fraudulent transfers.

1. The motion for a preliminary injunction should be denied because:

    (a)     The Court lacks authority under Rule 65 to grant a pre-judgment preliminary injunction preventing opposing Respondents from disposing of their assets to secure Petitioner's potential right to collect a future money judgment. (Sec. III A 1.)

    (b)     Petitioner cannot satisfy the test for a preliminary injunction because it has not shown and cannot show a likelihood of success on its alter ego and fraudulent conveyance claims, nor that there is a serious and substantial question as to the merits of those claims (Sec. III A 2&3.) Indeed, the claims cannot be asserted in a Petition to confirm an arbitration award. (Sec. III A 2(b)). Further, Petitioner has not shown and cannot show irreparable harm in the absence of a preliminary injunction (Sec. III A 2(a)), and has not shown and cannot show that the balance of hardships tips decidedly in its favor (Sec. III A 3). The only injury Petitioner claims it would suffer absent a preliminary injunction is the possibility it would not be able to collect a future money judgment against opposing Respondents. The Court, however, cannot grant an injunction to secure a possible future money judgment.

(c)    Petitioner would not be entitled to a preliminary injunction under CPLR 6210 even if it had sought one under that provision, which it did not, because CPLR 6210 applies only to garnishees, not defendants. (Sec. III A2(b).)

2.  The motion for attachment should be denied because Petitioner does not satisfy CPLR 6212 (a). Petitioner has not shown and cannot show it has a cause of action against opposing Respondents, or probability of success on the merits of any cause of action asserted (Sec. III B.) Moreover, it has not shown that the grounds for attachment under CPLR 6201 that it relies on exist. The requirements of CPLR 6201(3) and (5) are not met. (Sec. III B.)

3.  An Order requiring disclosure under CPLR 6220 would be improper. Such an order can only be granted after an order of attachment and attachment here would be improper. (Sec. III D.)  The Order of disclosure previously granted by the Court is ill-founded because no attachment was granted, and at the time it was granted, no summons had been served on opposing Respondents and the Court therefore did not have jurisdiction over them.

## II. **STATEMENT OF FACTS**

The relevant facts are set forth in the accompanying Declarations of David Elua, Randy Frischer, John Kyriakides, Beatrice Dozsa and Nikolai Pirtskhlaichvili.  The facts are discussed in the sections of the Argument below to which they relate.

## III. **ARGUMENT**

A.    **Petitioner Is Not Entitled To A Preliminary Injunction**

1.    **The Court Lacks Authority To Grant The Preliminary Injunction Sought Here**

Petitioner seeks a preliminary injunction under Fed. R. Civ. P. 65 to prohibit opposing Respondents from disposing of their own property, in order to ensure the collectability of Petitioner's claim for money damages against them.  Petitioner has not, however, obtained a

2

money judgment against the opposing Respondents and the United States Supreme Court has held, clearly and unequivocally, that there is no power under Rule 65 to prevent a defendant from disposing of its assets so they will be available to pay a possible future money judgment. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 311-13, 333 (1999).[1]

Petitioner admits in its supporting papers it is seeking money damages against the opposing Respondents, and it seeks to secure payment of the money judgment it hopes to obtain -- but does not have -- by restraining the opposing Respondents from disposing of their assets. (Pet. Mem. at pp. 7-9, see also p. 3; Unger Aff. ¶¶ 11, 12.) This is precisely the type of relief the Supreme Court held in *Grupo Mexicano* a federal Court does not have authority to grant.

Because this is not an equitable action and Petitioner does not have a lien or equitable interest in any identifiable assets whose transfer it seeks to enjoin, injunctive relief is not available. In particular, Petitioner's alter ego claim is legal, not equitable.

> The alter ego action … is an action for money damages, even though it is brought as part of an action to enforce a judgment. The equitable relief that the plaintiff seeks, including the setting aside of alleged fraudulent conveyances, is incidental to, and indeed contingent upon the success of, the plaintiff's alter ego action. Before the plaintiff can seek equitable relief in enforcing the prior judgment, it must prove the legal liability of [defendants] as alter egos.

*JSC*, 295 F. Supp.2d at 389; *accord Fischer Diamonds, Inc.*, 2006 WL 1720431, at * 2 (E.D.N.Y.). As the court stated in *JSC*, "[t]he ultimate relief the [Petitioner] seeks is legal, not equitable, in nature. Because the [Petitioner's] action is one for money damages, and because the [Petitioner] asserts no lien or equitable interest in the assets it seeks to restrain, this Court lacks

---

[1] *Accord Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan minyak Dan Gas Bumi Negara*, 500 F.3d 111, 117 fn.8 (2d Cir. 2007), *cert. denied*, 554 U.S. 929 (2008); *JSC Foreign Economic Assoc. Technostroyexprt v. Int'l Development & Trades Services, Inc.*, 295 F. Supp.2d 366, 388 (S.D.N.Y. 2003) ("*JSC*"); *Fischer Diamonds, Inc. v. Andrew Meyer Designs, L.L.C.*, 2006 WL 1720431, at *2 (E.D.N.Y. June 21, 2006). New York law is the same. *Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*, 94 N.Y.2d 541 (2000) (under CPLR § 6301).

the power to grant the preliminary injunction it seeks." 295 F. Supp.2d at 389.

Nor would a preliminary injunction be appropriate with respect to Petitioner's purported claim for fraudulent conveyance. In Count III of the Amended Petition, Petitioner does not identify any specific asset fraudulently conveyed which can be retrieved or arrested by an injunction. Accordingly, Petitioner has no lien or equitable interest in any of the opposing Respondents' assets. The "[c]ourt's equitable power to issue a preliminary injunction to prevent a defendant from transferring assets does not extend to an action for money damages where the plaintiff claims no lien or equitable interest in the assets sought to be enjoined.' " *JSC*, 295 F. Supp.2d at 388. Accordingly, a preliminary injunction cannot properly issue here.

### 2.   Petitioner Does Not Meet The Tests Required To Obtain A Preliminary Injunction

Even if the Court had authority to issue the requested injunction, the motion should be denied because Petitioner cannot satisfy the requirements for a preliminary injunction.

> A party seeking a preliminary injunction ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor.

*Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008). Here, Petitioner has not made, and cannot make, any of the required showings.

### (a)   Petitioner Cannot Show Irreparable Harm

Petitioner has not shown it will suffer irreparable harm if a preliminary injunction is not granted. As demonstrated above, Petitioner seeks a preliminary injunction to secure payment of a possible future money judgment and the Court does not have authority to grant such an injunction. Accordingly, that argument cannot form the basis for a showing of irreparable harm. Further, Petitioner has pointed to no other possible injury here.

4

### (b)    **Petitioner Cannot Establish Likelihood of Success**

Petitioner cannot show likelihood of success because its alter ego and fraudulent conveyance claims cannot properly be asserted in a special proceeding to confirm an arbitration award.   In addition, Petitioner cannot make the heavy showing required for piercing the corporate veil or make the showing necessary to sustain its fraudulent conveyance claim.

As Petitioner acknowledges, the Second Circuit has squarely held that "an action for confirmation [of an arbitration award] is not the proper time for a District Court to 'pierce the corporate veil.' " *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama S.A.*, 312 F.2d 299, 301 (2d Cir.), *cert. denied*, 373 U.S. 949 (1963). As *Orion* held, at 301:

> The usual officer of the confirmation action under 9 U.S.C. § 9 is simply to determine whether the arbitrator's award falls within the four corners of the dispute as submitted to him. This action is one where the judge's powers are narrowly circumscribed and best exercised with expedition. It would unduly complicate and protract the proceeding were the court to be confronted with a potentially voluminous record setting out details of the corporate relationship between a party bound by an arbitration award and its purported 'alter ego'.

Indeed, "[t]he question of alter ego is a uniquely fact sensitive one and courts in this Circuit are "extremely reluctant" to disregard corporate form. [citation omitted] Thus, especially where the record is voluminous and fragmented, questions of alter ego are generally inappropriate for resolution on a motion to confirm." *In re Arbitration Between Promotora De Navegacion, S.A.*, 131 F. Supp.2d 412, 422 (S.D.N.Y. 2000).

*Orion* remains good law, and at least three District Courts within the Second Circuit recently have dismissed claims to establish alter ego liability in a proceeding to confirm an arbitral award. *Leeward Constr. Co. v. American Univ. of Antigua-College of Medicine*, 2013 WL 1245549, at *1 (S.D.N.Y. Mar. 26, 2013); *Glencore AG v. Bharat Aluminum Co. Ltd.*, 2010 WL 4323264, at *5-6 (S.D.N.Y. Nov. 1, 2010); *In re Arbitration Between Promotora De Navegacion, S.A.*, 131 F. Supp.2d at 421-23.   Indeed, Petitioner originally brought this

proceeding in March, 2013 naming as Respondent only DGM Commodities, the party that lost in the arbitration. It was only in late May that Petitioner for the first time sought to make Mr. Elua, DGM Holding and Davini parties on this belated and unfounded "alter ego" theory.

While some cases have held that an independent basis of federal jurisdiction allows the court to disregard the holding in *Orion* (see Unger Supp. Aff. ¶ 15), they are not controlling here. Like the facts in *Orion* and these later cases, the question of alter ego here is fact intensive and voluminous. *Orion* should be followed and this claim cannot form the basis for the preliminary injunction sought by Petitioner. Similarly, Petitioner's alleged fraudulent conveyance claim is fact intensive and would unduly complicate this special proceeding.

Even if the Court were to entertain the alter ego and fraudulent conveyance claims, Petitioner has not adequately shown its entitlement to such extraordinary relief.

As a threshold matter, Petitioner misstates the showing required to impose alter ego liability. As this Court recently stated:

> In order to impose liability under an alter ego or piercing the corporate veil theory, a plaintiff must prove (1) that the person or entity sought to be held liable on said theory " 'exercised complete domination over the corporation with respect to the transaction at issue' **and** (2) that 'such domination was used to commit a fraud or wrong that injured' ... 'the party seeking to pierce the veil.' " *D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 Fed. Appx. 195, 197 (2d Cir. Feb. 15, 2005) (Summary Order) (*quoting Mag Portfolio Consult. Gmbh v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001).

*Two Kids from Queens, Inc. v. J & S Kidswear, Inc.*, 2010 WL 475319, at * 2 (E.D.N.Y. Feb. 8, 2010) (emphasis supplied).[2]

Petitioner incorrectly argues (Pet. Mem. p. 3) that it may show either of the factors, but

---

[2] *See Taizhou Zhongneng Import And Export Co., Ltd. v. Koutsobinas*, 2013 WL 335971, *2 (2d Cir. Jan. 30, 2013) ("Under New York law, a plaintiff must plead and prove two elements to establish veil-piercing liability…"); *James v. Loran Realty V Corp.*, 20 N.Y.3d 918 (2012) (plaintiff has burden to show that "individual defendants 'abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against them' ").

that is not the law in New York. In *Morris v. New York State Dep't of Taxation*, the New York

Court of Appeals held that both factors, not just one of the two factors, must be met. 82 NY.2d

135, 142 (1993). *See Bravado Int'l Group Merchandising Services, Inc. v. Ninna, Inc.*, 655 F.

Supp.2d 177, 195 (E.D.N.Y. 2009), discussing *Morris* and the change in standard:

> *Morris* ... holds that under New York law, "[w]hile complete domination of the
> corporation is the key to piercing the corporate veil, especially when the owners
> use the corporation as a mere device to further their personal rather than the
> corporate business, such domination, standing alone, is not enough; ... [t]he party
> seeking to pierce the corporate veil must establish that the owners, through their
> domination, abused the privilege of doing business in the corporate form to
> perpetrate a wrong or injustice against that party such that a court in equity will
> intervene."

*Id.* at 195. Petitioner relies upon cases which pre-date the decision in *Morris*, except for one case

which on its facts applies the *Morris* standard.

The courts, including "[t]he New York Court of Appeals [have] reiterated that the

requirements of *Morris* are not easy to meet." *Bravado Int'l Group*, 655 F. Supp.2d at 195 *citing*

*TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339 (1998). "Those seeking to pierce a

corporate veil of course bear a heavy burden of showing that the corporation was dominated as to

the transaction attacked and that such domination was the instrument of fraud or otherwise

resulted in wrongful or inequitable consequences." *TNS Holdings, Inc.*, 92 N.Y.2d at 339;

*Bravado Int'l Group*, 655 F. Supp.2d at 195. "Indeed, courts should permit veil-piercing only

under 'extraordinary circumstances,' " *Bravado Int'l Group*, 655 F. Supp.2d at 195, and it is

Petitioner's obligation to "allege facts to support any conclusory assertions of alter ego liability."

*Leykis v. NYP Holdings, Inc.*, 899 F. Supp. 986, 992 fn. 4 (E.D.N.Y. 1995) (granting motion to

dismiss); *Valle v. YMCA of Greater New York*, 2006 WL 1376935, at * 2 (S.D.N.Y. May 17,

2006) ("conclusory factual assertions and recitations of legal principles" are insufficient to show

a likelihood of success on the merits); *Erdman v. Stevens*, 458 F.2d 1205, 1210 (2d Cir.), *cert.*

7

*denied*, 409 U.S. 889 (1972) (conclusory charges in complaint and supporting papers fail to set forth facts establishing likelihood of success on the merits).

Here, based on inaccurate and incomplete facts, conclusory assertions, and innuendo, Petitioner seeks to hold the opposing Respondents liable for the arbitration award against DGM Commodities. That liability stemmed from a shipment of goods on Petitioner's vessel, ANDRA. Petitioner has not even attempted to show that the opposing Respondents exercised the requisite domination and control over DGM Commodities in connection with ANDRA transaction, nor that any such domination and control were exercised over DGM Commodities to commit fraud or wrong that injured Petitioner in that transaction.

Instead, Petitioner relies on events that occurred well after the ANDRA transaction claiming that such events involved improper attempts to prevent Petitioner from being able to collect a judgment against DGM Commodities. However, Petitioner has failed to show that in connection with any of those events opposing Defendants dominated and controlled or committed a fraud or wrong that injured Petitioner.

Petitioner claims that unspecified opposing Respondents improperly caused Tyson Foods to issue an invoice in the name of CII rather than in the name of DGM Commodities. (Am. Pet. ¶ 66.) That is flatly untrue and belied by documentary evidence. (Elua Dec. ¶¶ 53-62 & Exs. 10 & 11). Tyson Foods had erroneously referred to DGM Commodities on certain documents when the actual purchaser was CII, <u>as shown by CII's purchase order dated June 15, 2009, which pre-dates the June 24, 2009 Tyson Foods documents Petitioner relies upon</u>, as well as other documents. (Elua Dec. ¶¶ 53-62 & Exs. 10 & 11.). Not surprisingly, Petitioner failed to bring these documents, which conclusively refute its assertion, to this Court's attention.

Second, Petitioner does not allege sufficient facts to demonstrate domination of DGM

8

Commodities by the opposing Respondents.

The courts consider the following factors in determining whether a company was dominated and controlled for alter ego liability purposes:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm's length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Two Kids from Queens, Inc.*, 2010 WL 475319 at * 3.

Petitioner has not shown facts establishing the absence of corporate formalities. To the contrary, what little Petitioner has attached shows that such formalities were followed. (Am. Pet. Exs. A & AA.) For example, corporate action in lieu of meetings was taken; separate bank accounts were maintained; appropriate tax returns for each company were filed; and the companies had separate financial and accounting records. (Elua Dec. ¶¶ 13-28 & Exs. 1-6; Frischer Dec. ¶¶ 10, 12; Kyriakides Dec. ¶¶ 5-6.)

Nor has Petitioner alleged facts establishing inadequate capitalization of the alleged dominated entity, DGM Commodities. Indeed, it admits it cannot do so. (Unger Aff. ¶ 79.) In fact, in 2007, the year it entered into the ANDRA transaction, DMG Commodities had sales of $136.4 million, net income of over $6 million, and at December 31, a net worth of almost $9 million and cash in its bank account of more than $3 million. (Elua Dec. ¶ 49 & Ex. 7.)

Petitioner also has not shown that funds were used by the opposing Respondents for non-corporate purposes, or that funds or property of DGM Commodities (the allegedly dominated

9

entity) were used as if they were the property of Mr. Elua, CII or Davini.

Petitioner similarly claims that a purchase of frozen chicken parts from Mountaire Farms was improperly put in the name of CII even though DGM Commodities was the purchaser. This, too, is blatantly false and its falsity was concealed by Petitioner's failure to submit to the Court the purchase order to Mountaire Farms, <u>which came from CII, not DGM Commodities</u>. (See Dozsa Dec. ¶ 5 and Exs. 101 & 102); Petitioner also misstates the facts when it claims that frozen chicken parts held in inventory in La Porte, Texas were transferred from DGM Commodities to CII. (Am. Petit. ¶ 71.) All that Petitioner has shown was that in the tax year 2009 there was certain inventory stored at the La Porte facility in the name of DGM Commodities and that in the tax year 2011 there was inventory at the La Porte facility in the name of CII. Petitioner has not demonstrated that any of the 2009 inventory had been transferred to CII or that any of the inventory that was in the La Porte facility in 2009 was still there in 2011 (which due to shelf life and spoilage would be impossible.) (Elua Dec. ¶¶ 92-95.)

Petitioner claims, as an example of Mr. Elua's abuse of the corporate form, that the January 1, 2008 Assignment Agreement restructuring DGM Holding's corporate group so CII and Momaco became direct subsidiaries of DGM Holding, rather than continuing to be indirect subsidiaries, was back dated and the transaction actually post-dated the Assignment Agreement (Am. Pet. ¶ 80.) That contention also is false. The Agreement was signed in December 2007, effective January 1, 2008, well before the problems regarding the vessel ANDRA had even arisen. (Elua Dec. ¶¶ 113-120; Pirtskhalaichvili Dec. ¶ 6.)

Petitioner claims as another example of Mr. Elua's abuse of the corporate form, that DGM Commodities sold frozen chicken parts to Global Trading; that Global Trading failed to pay for that product; that DGM Commodities sued Global Trading for that breach, settled the

lawsuit, and in connection with the settlement, DGM Commodities instructed Global Trading to make the settlement payments to CII. (Am. Petit. ¶ 81.) Once again, Petitioner misstates the facts. DGM Commodities had purchased the frozen chicken parts from Tyson Foods and sold them to CII after CII had contracted to sell them to Global Trading. The sale was between CII and Global Trading, not between DGM Commodities and Global Trading. (Elua Dec. ¶¶ 65, 68-79 Exs. 12-18.) Petitioner also has misstated the nature of the lawsuit that DGM Commodities subsequently brought. It was not a suit based on Global Trading's breach of the contract to purchase the frozen chicken parts. It was brought by DGM Commodities as a third party beneficiary of certain maritime contracts to obtain a Rule B maritime attachment and garnishment against Global Trading based on Global Trading's breach of those maritime contracts -- the charter parties Global Trading had entered into with the owners of the vessels that were transporting the frozen chicken parts. (Elua Dec. ¶¶ 80-89 & Exs. 19-23.) The settlement was a reduction in the purchase price Global Trading still owed for the frozen chicken parts, and that payment was properly to be made to the seller, CII. (Elua Dec. ¶ 90 & Ex. 24.)

Petitioner asserts that the fact that DGM Commodities, among others, guaranteed a bank loan to Davini for Davini's purchase of the office building and the existence of the guaranty shows a commingling of assets. This is contrary to reality. It is a common and regular business practice for owners of closely held companies, and their affiliates, to guarantee loans made to an affiliated company (Elua Dec. ¶¶ 100-102; Frischer Dec. ¶ 15.) As a further example of supposed commingling of funds, Petitioner notes that Mr. Elua personally guaranteed and agreed to satisfy out of his own personal funds loans that were made to DGM Commodities, CII and Momaco. (Am. Petit. ¶ 89.) The transaction Petitioner refers to is a loan from Wells Fargo Bank to DGM Commodities, CII and Momaco, the repayment of which was guaranteed by Mr. Elua

11

and DGM Holding. Davini had nothing to do with this transaction. There was nothing untoward about the transaction, including the routine act of the direct and indirect owners of a company guaranteeing loans made to that company as required by the lender. (Elua Dec. ¶¶ __; Frischer Dec. ¶ 15)

To the extent there were inter-company transfers of funds, they were documented as loans and/or sales or purchases of goods in the records of each of the participating entities, and periodically repaid. (Elua Dec. ¶¶ 42-45; Frischer Dec. ¶ 13.) With respect to the allegation concerning transfer of funds by DGM Holding, Momaco and DGM Commodities to CII, as the Petition itself recognizes, because CII lacked sufficient funds to pay its suppliers and enable its cargo laden vessel M/V GLACIER BAY to be ordered to port, funds were transferred to that entity. (Am. Pet. ¶¶ 83-84.) But that was merely an advance, not a commingling of funds. (Elua Dec. ¶¶ 96-99.) The transfers to and from CII were also to clean up inter-company receivables and payables. (Elua Dec. ¶ 99.) The transfers were recorded -- that is how Petitioner knows of them – and CII repaid them. The financial records of the corporations reflect intercompany balances, loans and repayments. (Elua Dec. ¶¶ 43-45; Frischer Dec. ¶ 13; Kyriakides Dec. ¶ 6.) Thus, Petitioner does not show there was any improper commingling of funds.

With respect to the existence of independent business discretion and arm's length dealings, anytime there is an overlapping control of one or more entities, such independence and arm's length dealings would appear to be lacking, but the law of New York does not find that alone sufficient to disregard the corporate veil. Otherwise, closely held corporations and single member LLCs would always be vulnerable to an alter ego claim. That Elua acted on behalf of the entities he owned or was responsible for as an officer/employee, should have no weight here.

Although Petitioner has alleged common ownership, employees, address, phone and fax

numbers, and email and web address, among DGM Commodities, DGM Holding, Davini and Elua, that is not entirely true, and even if true, it would not warrant piercing the corporate veil. *See, e.g., Waite v. Schoenbach*, 2010 WL 4456955, at *4 (S.D.N.Y. Oct. 29, 2010) (allegation that parent and subsidiaries "operate at the same location and share employees, officers, owners, and bank accounts" is insufficient to support veil piercing) (internal quotation marks omitted); *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 404 (S.D.N.Y. 2007) (similar); *In re Amaranth Natural Gas Commodities Lit.*, 587 F. Supp.2d 513, 538 (S.D.N.Y. 2008) (similar).  In fact, Momaco had an office and its own personnel in Brazil.  (Elua Dec. ¶ 33.)

Even if complete domination were present, as we have shown it was not, the alter ego claim still would fail.

Petitioner makes a hearsay, unsupported claim that DGM Commodities started to transfer its operations, supply chains and logistic networks to other affiliated entities.  (Unger Aff. ¶ 55). Respondents deny the assertions (see Elua Dec. ¶¶ 48-50).  "Supply chains" and "logistic networks" are not property that can be "transferred."  What Petitioner is complaining about is that in 2009 Mr. Elua ceased doing new business through DGM Commodities.  He had every right to do that; even a debtor -- and DGM Commodities was not yet a debtor of Petitioner -- does not have to continue in business to benefit its potential creditors.  The only possible complaint is if existing orders or other assets were diverted away from DGM Commodities and Petitioner has failed to show that this occurred and that it was done to commit a fraud or wrong against Petitioner. *Two Kids from Queens, Inc.*, 2010 WL 475319 at * 2 (*quoting D. Klein & Son, Inc.*, 147 Fed. Appx. at 198 (second prong, "may be satisfied either upon a showing of fraud or upon complete control ... that leads to a wrong against third parties.")) Accordingly, this does not establish alter ego liability either.

13

As to Davini, other than sharing space, employees, phone, fax and email and web addresses, there is no showing of **any** facts relating to Davini, much less facts showing that Davini exercised domination and control over DGM Commodities, or that any such domination was used in some manner to commit a fraud or wrong against Petitioner.

Accordingly, Petitioner has shown no facts demonstrating that, in connection with the transaction at issue, Elua, DGM Holding or Davini dominated and controlled DGM Commodities, or that any supposed domination was used to commit a fraud or wrong against Petitioner.

Petitioner also purports to assert a fraudulent conveyance claim based on the alleged transfer of assets and property of DGM Commodities.[3] Once again, Petitioner does not demonstrate any likelihood of success. At most, Petitioner makes conclusory factual assertions and recites some sections out the New York Debtor & Creditor law. That is insufficient. *Valle*, 2006 WL 1376935 at * 2 ("conclusory factual assertions and recitations of legal principles [are insufficient] to demonstrate a likelihood of success on the merits"); *Erdman*, 458 F.2d at 1210 (conclusory charges in complaint and supporting papers are insufficient).

While Petitioner makes the conclusory assertion that the transfers "were done with intent to hinder, delay or defraud [Petitioner]" (Am. Pet. ¶ 97), it does not identify specific wrongful transfers; it does not set forth any facts demonstrating actual intent; and it does not even cite to

---

[3] It unclear which sections of the Debtor & Creditor law the Petitioner relies upon. In its memorandum, it simply makes the conclusory assertion that the "same facts and circumstances" show a violation of New York Debtor & Creditor law, Article 10. (Pet. Mem. p. 4.) In its argument in the Unger Aff. relating to its fraudulent conveyance claim, Petitioner simply quotes sections 273 and 273-a of New York Debtor & Creditor Law and states that the property so conveyed is subject to attachment and that the respondents are subject to an injunction under sections 278 and 279 of the Debtor & Creditor Law. (Unger Aff. ¶¶ 90-91.)

Debtor & Creditor Law § 276, which requires actual intent.[4] Furthermore, the claims are not pled with the specificity required by Fed. R. Civ. P. 9(b).

To the extent Petitioner claims the transfers were made without DGM Commodities receiving reasonably equivalent value and were made at a time when DGM Commodities was insolvent or was rendered insolvent by the transfers (Am. Pet. ¶ 98), Petitioner sets forth no facts demonstrating that DGM Commodities was insolvent or rendered insolvent by any transfer.[5] Nor has Petitioner set forth facts showing that any such transfers were without fair consideration. Accordingly, there is no likelihood of success on a claim under D.C.L. § 273.

Similarly, Petitioner fails to set forth facts necessary to sustain a claim under section 273-a of the Debtor & Creditor Law. That section allows avoidance of transfers made without fair consideration.[6] Accordingly, Petitioner cannot establish a likelihood of success on a claim under D.C.L. § 273-a either.[7]

Nor is Petitioner entitled to a preliminary injunction under CPLR 6210. In his letter to the Court dated June 6, 2013, Petitioner's counsel asserted that CPLR 6210 would permit a

---

[4] D.C.L. 276 provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

[5] Debtor & Creditor Law § 273 requires that the transferor be insolvent at the time of the transfer, or was rendered insolvent by the transfer, and that the conveyance be without fair consideration. "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." D.C.L. § 273.

[6] "Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment." D.C.L. § 273-a.

[7] To the extent that Petitioner seeks to hold opposing Respondents under D.C.L. § 273-a, Petitioner does not have a judgment against the opposing Respondents and any liability would necessarily be based on an alter ego theory. As set forth above, Petitioner has not established a likelihood of success on that theory, and in any event an injunction would not be permissible based on such a claim since a claim based on alter ego theory is an action for money damages. *See JSC*, 295 F. Supp.2d at 389.

15

temporary restraining order against transfers of opposing Respondents' assets. Petitioner is incorrect. CPLR § 6210 on its face only applies to restraining orders against transfers by "garnishees," not by defendants. And it only authorizes a "temporary restraining order," not a preliminary injunction. *See Dic Animation City, Inc. v. McNaught Syndicate, Inc.,* 1993 WL 535064, at * 4 (S.D.N.Y. Dec. 21, 1993) (denying motion for a temporary restraining order and preliminary injunction against a defendant under New York law, finding no authority to do so, noting that "[t]he CPLR provides for temporary restraining orders against particular garnishees, *see* § 6210, but that is a far more narrow remedy.") *See also Canwest Global Comm. Corp. v. Mirkaei Tikshoret Ltd.,* 9 Misc.3d 845, 863 fn. 6 (Sup. Ct. N.Y. Co. 2005) (noting CPLR 6210 permits a TRO against a garnishee and noting that garnishee is defined as someone other than the judgment debtor). While Petitioner cites to a Practice Commentary which suggests that a § 6210 temporary restraining order should be available against a defendant, the plain language of the statute is clear on its face that it applies only to a "garnishee" and must be applied as written. "Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning." *People v. Garson,* 6 N.Y.3d 604, 611 (2006).

### 3. Petitioner Is Not Entitled To An Injunction Because There Is No Merit To Its Claims And It Has Not Shown That The Balance of Hardship Tips In Its Favor

The same authorities establishing that Petitioner cannot show a likelihood of success on the merits, also demonstrate that there is not a sufficiently serious question going to the merits of Petitioner's claims to meet the test for a preliminary injunction.

The balance of hardship here tips decidedly in favor of the opposing Respondents, who are being deprived of the use of substantially all of their property. Petitioner will not suffer from not obtaining a remedy that the Court is not authorized to grant. Opposing Respondents,

however, will suffer extreme hardship if their assets are tied up during the pendency of this litigation.

Petitioner refers to the transaction submitted for approval in the CII and Momaco bankruptcies, where Mr. Elua was to use $1.5 million of his own money to make payment to Wells Fargo Bank by June 30. Petitioner does not inform the Court that the deal, which now is uncertain, would have relieved Mr. Elua, DGM Holding, CII and Momaco of over $2 million of debt. This loss, which should be covered by an increased bond, is a clear example of the havoc that Petitioner has caused and threatens to cause by their improper interfering with Respondents' use of their property.

In addition, if DGM Holding's assets are restrained, it will not be able to fund the Plans of Reorganization in the CII and Momaco bankruptcy proceedings. This may result in additional losses to CII and Momaco's creditors who are owed over $10 million dollars. *See*, Joinder of Commodities International and Momaco International Corp. in Opposition to Petitioner's Motion for a Preliminary Injunction and Attachment.

**B.    Petitioner Is Not Entitled To An Attachment**

Under CPLR § 6212(a) "[o]n a motion for an order of attachment ..., [petitioner] shall show, by affidavit and such other written evidence as may be submitted, that there is a cause of action, that it is probable that [petitioner] will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to [petitioner]." CPLR § 6212(a). Here, Petitioner relies on CPLR § 6201(3) which requires that:

> the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts.

17

"[A]ttachment is an extraordinary and harsh remedy, and ... it is therefore necessary that the statutory factors be 'strictly construed in favor of those against whom' attachment is sought." *Song*, 2011 WL 3846929, at *2; *accord, Shiu v. New Peking Taste Inc.*, 2012 WL 2351370, at *16 (S.D.N.Y. May 28, 2013); *Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, 2006 WL 2337186, *5 (S.D.N.Y. Aug 11, 2006); *Michaels Elec. Supply Corp. v. Trott Elec. Inc.*, 231 A.D.2d 695, 695 (2d Dep't 1996), *see Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 331-32 (2d Cir.1983) (noting the "stringent" nature of the requirements of CPLR 6201(3).)

An attachment is inappropriate where maintaining the attachment would cause a severe hardship to the defendant. *Trump v. Cheng*, 9 Misc.3d 1120(A), 2005 WL 2738344, at *3 (Sup. Ct. N.Y. Co. Sep. 14, 2005) (vacating attachment where, inter alia, it would cause a severe and irremediable hardship to defendants); *Trigo HNOS, Inc. v. Premium Wholesale Groceries*, 424 F. Supp. 1125, 1133 (S.D.N.Y. 1976) (denying attachment where previous attachment in matter, later vacated, caused oppressive and irremediable hardship to defendant). As described above, the existing restraining order already may have caused $500,000 in damage, and may result in further imminent harm.

Accordingly, even if the statutory criteria are met, the Court has the discretion to deny an attachment. "[M]ere satisfaction of the statutory criteria does not guarantee that the motion will be granted. Instead, relief is discretionary and since attachment is a harsh remedy, the court must exercise care in its application." *Song*, 2011 WL 3846929, at *2 (internal quotation omitted); *Signal Capital Corp. v. Frank*, 895 F. Supp. 62, 64 (S.D.N.Y. 1995).

Importantly, Mr. Elua, DGM Holding and Davini are not debtors of Petitioner and unless and until Petitioner succeeds in obtaining a money judgment, they will not be debtors of Petitioner. Accordingly, their property is not subject to attachment.

"It is beyond cavil that attachment will only lie against the property of the debtor, and that the right to attach the property 'is only the same as the defendant's own interest in it.' " *Bank of New York v. Nickel*, 14 A.D.3d 140, 145 (1st Dep't 2004). Petitioner "must show the existence of a ground for attachment as to each defendant against whom he seeks a warrant." *Ford Motor Credit Co. v. Hickey Ford Sales, Inc.*, 62 N.Y.2d 291, 301-02 (1984); *Marin v. Trupin*, 738 F. Supp. 98, 103 (S.D.N.Y. 1990).

"As to the element of probability of success, a party seeing an order of attachment must demonstrate that it is more likely than not that it will succeed on the merits. This requires the making of an evidentiary showing that is greater than that required to show a prima facie case." *Song*, 2011 WL 3846929, at * 2. Conclusory assertions are insufficient to warrant a writ of attachment. *Shiu*, 2102 WL 2351370 at *18. Nor is hearsay alone sufficient to support the harsh remedy of an order of attachment. *Swiss Bank Corp. v. Eatessami*, 26 A.D.2d 287, 290 (1st Dep't 1966); *Urstadt Biddle Properties, Inc. v. Excelsior Realty Corp.*, 17 Misc.3d 1130(A), 2007 WL 4151664, at *5 (Sup. Ct. West. Co. Sep. 28, 2007).

As discussed above, Petitioner has not and cannot establish liability against the opposing Respondents based on theories of alter ego liability or fraudulent conveyance. For that reason, any attachment against the opposing Respondents based on alleged conduct of DGM Commodities should be denied. The courts have denied an attachment against an owner of a corporation where plaintiff failed to demonstrate it was entitled to pierce the corporate veil. *See, e.g., Michaels Elec. Supply*, 231 A.D.2d at 695; *Trump*, 2005 WL 2738344 at *7-8.

Nor has Petitioner shown that the grounds for attachment under § 6201 (3) and (5) - that it relies on – have been satisfied. As to CPLR § 6201(3), Petitioner "must show that the party against whom an attachment is sought has, or is about to engage in one of the acts set forth in the

19

statute with respect to the disposal of assets, **and** that such acts were undertaken with fraudulent intent or to frustrate the enforcement of a judgment." *Song*, 2011 WL 3846929 at * 2 (emphasis supplied); *accord, Breznoff v. Vasquez*, 107 Misc.2d 197, 198 (Civ. Ct. N.Y. Co. 1980). Constructive fraud is insufficient. *Signal Capital Corp.*, 895 F. Supp. at 64-65 (previous finding of constructive fraud under DCL 273-a was not a finding of actual knowledge or intent to defraud and therefor was insufficient to warrant a preliminary injunction or an attachment.)

No such showing has been made here. The Court should also note that Davini is not accused of any misconduct whatsoever. Therefore, attachment of Davini's property is clearly unavailable and must be denied.

Mere removal, assignment or other disposition of property is not a ground for attachment under § 6201(3). *Shiu*, 2102 WL 2351370 at *17; *Computer Strategies, Inc. v. Commodore Business Machines, Inc.*, 105 A.D.2d 167, 173 (2d Dep't 1984); *see Song*, 2011 WL 3846929 at *2 ("mere movement of property is insufficient to support an order of attachment"). "There must coexist an intent of the debtor to defraud his creditors. ... Such intent must be proved, and the facts relied upon to prove it must be fully set out in the moving affidavits.'" *Eaton Factors Ca. Inc. v. Double Eagle Corp.*, 17 A.D.2d 135, 136 (1st Dep't 1962); *Morin*, 738 F. Supp. at 105; *Shiu*, 2102 WL 2351370 at *17 ("plaintiffs must proffer "evidentiary facts as opposed to conclusions," proving that defendants, in assigning the property, acted, or will act, with the specific intent to defraud creditors or frustrate a potential judgment"). Indeed, "[t]he intent to defraud cannot be presumed from the mere fact that the defendant has liquidated or disposed of some of its business assets." *Nanjing Textiles IMP/EXP Corp., Ltd.*, 2006 WL 2337186 at *6. "Thus, fraud is never presumed by a mere showing of the liquidation or disposal by a debtor of its business assets." *Eaton Factors Co. Inc.*, 17 A.D.2d at 136.

Petitioner spends a lot of effort describing alleged transfers by <u>DGM Commodities</u> to CII and other unidentified entities. However, "to justify an attachment on [CPLR 6201(3)], 'the property removed or secreted <u>must be the property of the defendant</u>' " whose property the party is trying to attach. *Eaton Factors Co. Inc.,* 17 A.D.2d at 136 (emphasis added); *see Nanjing Textiles IMP/EXP Corp., Ltd.,* 2006 WL 2337186 at \*5. The removal of property of a separate entity is insufficient. Accordingly, transfers by DGM Commodities cannot form the basis for an attachment against property of the opposing Respondents. And, as noted above, with respect to Davini, Petitioner makes no allegation of any transfers, whether purportedly fraudulent or otherwise.

With respect to DGM Holding, the only alleged transfer of any of its assets concerns an advance of funds to CII in connection with the M/V GLACIER BAY. (Am. Pet. ¶¶ 83-84) But Petitioner does not set forth any facts, or even assert that such transfer was made with the intent to defraud Petitioner or frustrate the enforcement of a judgment against DGM Holding. Moreover, the funds that were transferred were reflected on the books of the corporations. And, the money was repaid. Elua Dec. ¶¶ 96-99. Petitioner cannot even establish it was a creditor of DGM Holding at the time. Petitioner did not even assert its status as an <u>alleged</u> creditor of DGM Holding and Elua until three weeks ago when Petitioner made his claim of alter ego liability in this proceeding. Nor has Petitioner shown that DGM Holding is about to make any disposition of its property to defraud Petitioner or frustrate its judgment. Attachment is a harsh remedy, and should not be lightly granted on a mere suspicion of fraud.

With respect to Elua, the only allegation against Elua relating to transfer of **his** property relates to the pending payment under the Settlement Agreement with Wells Fargo. (Am. Pet. ¶¶ 89-93.) However, there is nothing secret or improper about such a transfer. No presumption of

21

intent to defraud arises from a mere transfer of property, particularly where there is an objectively legitimate reason for the transfer. Elua, as a guarantor of the loan that was subject of the action brought by Wells Fargo, was named as a defendant on his guaranty, and settled the claim with Wells Fargo for the payment alleged, which settlement was approved by the court. The $500,000 reduction in liability which he negotiated is more than fair consideration. Further, as a secured debt, Wells Fargo's liability would be paid prior to the alleged liability to Petitioner even if Petitioner succeeded on its claims here. No intent to defraud Petitioner or frustrate its judgment can be presumed from such a fully disclosed, court approved transfer, and any such assertion would be absurd.

"Fraud cannot be inferred; it must be proved." *Eaton Factors Co. Inc.*, 17 A.D.2d at 136; *accord, Nanjing Textiles IMP/EXP Corp., Ltd.*, 2006 WL 2337186 at *5. "The fact that the affidavits in support of an attachment contain allegations raising a suspicion of an intent to defraud is not enough; it must appear 'that such fraudulent intent really existed in the mind of the defendants, and not merely in the ingenuity of the plaintiffs.'" *Eaton Factors Co. Inc.*, 17 A.D.2d at 136 (internal citation omitted); *Computer Strategies, Inc.*, 105 A.D.2d at 173 ("suspicion of intent to defraud is not enough"). Nor is sufficient intent of fraud shown by a statement by the debtor that "they had sold 'out all of our assets' and that the plaintiff's judgment would be uncollectible." *Eaton Factors Co. Inc.*, 17 A.D.2d at 136.

Even if the Court were to consider as evidence against opposing Respondents the transfers made by DGM Commodities, as shown in the Elua Dec. and below, none of those transfers show any fraudulent intent. The Courts look to "badges of fraud" to determine whether a defendant acted with fraudulent intent. Such badges include gross inadequacy of consideration; a close relationship between transferor and transferee; the transferor's insolvency

as a result of the conveyance; a questionable transfer not in the ordinary course of business; secrecy in the transfer; and retention of control of the property by the transferor after the conveyance. *Song*, 2011 WL 3846929 at * 2.

Here, the transfers at issue do not evidence a sufficient showing of these badges of fraud. As shown above, the change on the Tyson invoice was to correct Tyson's error; the payments relating to MV GLACIER BAY were an advance of funds for a proper business purpose, **and was later repaid.** The transactions were not done in secret, they were recorded in the books of the companies, and they did not result in any insolvency of the transferors.

As stated above, Petitioner must show the existence of grounds as to each defendant, and to justify an attachment based on the removal or secreting of property, Petitioner must show that it was made with intent to defraud and that such property was the property of the particular defendant. Petitioner has not and cannot do so here.

With respect to Petitioner's reliance on CPLR § 6201(5),[8] the simple answer is that Petitioner does not have a judgment against opposing Respondents, and cannot rely on that section. *See Bank of New York*, 14 A.D.3d at 145 (attachment will only lie against properly of the debtor).

## C.    The Court Lacked Jurisdiction Over Opposing Respondents When It Signed The Order Granting The TRO And Ordering The Accounting

When Petitioner served opposing Respondents with the Order to Show Cause, Amended Verified Petition, Memorandum of Law and supporting affirmations on June 7, 2013, opposing Respondents were not served with a summons or amended summons. [Docket entry #14] As of

---

[8] CPLR § 6201(5) provides for an attachment where: "the cause of action is based on a judgment, decree or order of a court of the United States or of any other court which is entitled to full faith and credit in this state, or on a judgment which qualifies for recognition under the provisions of article 53."

that date, only DGM Commodities had been served with a summons. The Amended Summons was not served upon opposing Respondents until June 24, 2013. (Elua Dec. ¶¶ 121-124.) "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of a summons must be satisfied." [9] *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Because the amended summons was not served on opposing Respondents until after service of the Order to Show Cause containing the TRO and the order for an accounting, the court lacked jurisdiction over the opposing Respondents at that time and did not acquire jurisdiction over them until June 24, 2013 when the Amended Summons was served. Accordingly, any temporary restraining order between June 7 and June 24 is void, entitling opposing Respondents to recover damages for any injury the TRO may have caused, and the order for an accounting in the order to show cause is void as well.

**D.** **Petitioner Is Not Entitled To Disclosure Under CPLR Section 6220**

The Court has ordered disclosure by the opposing Respondents under CPLR § 6220. However, because there has been no attachment of any property, such disclosure is not permissible here. CPLR § 6220 provides:

> Upon motion of any interested person, at **any time after the granting of an order of attachment** and prior to final judgment in the action, upon such notice as the court may direct, the court may order disclosure by any person of information regarding any property in which the defendant has an interest, or any debts owing to the defendant. CPLR § 6220 (emphasis added).

The case law on this issue could not be clearer. "Disclosure in aid of attachment is available only 'after the granting of an order of attachment' (CPLR 6220)." *Ferriter v. Cook*, 231 A.D.2d 871, 871 (4th Dep't 1996). "Thus, in order to obtain discovery pursuant to CPLR §

---

[9] While a summons need not be served to confirm an arbitration award under Section 9 of the Arbitration Act, *see Home Ins. Co. v. RHA/Pennsylvania Nursing Homes, Inc.*, 113 F. Supp.2d 633, 635 fn.10 (S.D.N.Y. 2000), Petitioner here is not merely seeking to confirm an arbitration award. Rather it is also asserting separate claims against the Respondents under an alter ego theory and for alleged fraudulent conveyance.

6220, 'there must be a valid attachment outstanding at the time disclosure is sought.' " *Carteret Savings Bank, F.A. v. East-West Assocs. Ltd. Partnership*, 143 A.D.2d 612, 533 N.Y.S.2d 428, 429 (1st Dep't 1988), *appeal dismissed*, 73 N.Y.2d 918 (1989) *See also Heller Financial, Inc. v. Wall Street Imports, Ltd.*, 140 Misc.2d 205, 206-07 (Sup. Ct. N.Y. Co. 1988); *Etalon Imob S.R.L. v. Schoenbach*, 2012 WL 4741595, *5 (S.D.N.Y. Oct. 3, 2012). Here, no order of attachment has been ordered, so disclosure under CPLR § 6220 is not permitted here.

Further, even if an attachment order had been issued, or is issued, against DGM Commodities, an order of disclosure as to the assets of the opposing Respondents wholly unconnected with the property of or a debt owed to DGM Commodities is inappropriate. *Guinan v. Allan*, 40 A.D. 137, 57 N.Y.S. 614, 616 (2d Dep't 1899) (discussing NY Code of Civil Procedure § 651). The statute is limited to property "in which the defendant has an interest" (CPLR § 6220), and does not warrant disclosure of "the affairs of a witness wholly unconnected with the property of the defendant." *Guinan*, 57 N.Y.S. at 616.

## CONCLUSION

For the reasons set forth above and in the accompanying Declarations, Petitioners' motion for a preliminary injunction, an attachment, and disclosure in aid of attachment should be denied.

Dated: New York, NY
     July 3, 2013

                                 Respectfully submitted,
                                 MARGOLIS & TISMAN LLP

                               By:_____

                                   Stephen B. Tisman
                                 James F. Parver
                               280 Madison Avenue, Suite 500
                               New York, NY 10016
                               Tel: (212) 213-5800
                               Attorneys for Opposing Respondents